UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


PETER CARDENAS,

      Plaintiff,

v.                          Case No: 2:14-cv-496-FtM-29CM

CAPT. GATTO, SGT. BUSH,
SGT. RIOS, (Sic), OFFICER
JONES, CAPT. WORST, and FNU
WARD, in individual
capacity,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon review of a motion to dismiss filed by Defendants Bush, Gatto, Jones, Reid, Rios, and Worst (Doc. 52, filed May 12, 2016). For the reasons stated in this Order, the motion is **GRANTED** in part and **DENIED** in part. All claims against Defendant Reid and all "official capacity" claims against the other Defendants are dismissed. The Defendants are directed to file an answer to the remaining claims within twenty-one days from the date on this Order.

I. **Pleadings**

A. **Complaint**

Plaintiff makes the following allegations in his second[1] amended complaint:

On December 23, 2013, while housed in the f-dorm of the Charlotte Correctional Institution, Plaintiff was approached by Defendants Gatto, Jones, Bush, and Rios (Doc. 49 at ¶ 1). He was handcuffed from behind, and his feet were secured by leg irons. Id. While being escorted to pro-confinement, Plaintiff was picked up and slammed to the floor by Defendants Rios and Jones. Id. at ¶ 2. Defendant Gatto, who was the supervisor, instructed Defendants Rios and Jones, "not here in population. Let's do this in multiservice." Id. Plaintiff was then picked up from the floor and escorted to multiservice. Id.

While in multiservice, Defendants Jones and Bush again picked up Plaintiff and slammed him to the floor (Doc. 49 at ¶ 9). While on the floor, he was kicked by Defendant Rios and lost consciousness. Id. When he woke, Defendants Rios and Bush were kicking him. Id. Defendant Bush told Plaintiff that he hated "all you niggers." Id.

---

[1] Plaintiff has labeled the operative complaint as the "Third Amended Complaint" (Doc. 49). However, it is actually the second amended complaint filed in this action. Any reference to the complaint in this order is to docket entry 49.

While being escorted to medical, Defendant Gatto told Plaintiff that if he reported what happened, he (Defendant Gatto) would break Plaintiff's jaw (Doc. 49 at ¶ 6).  As a result, Plaintiff refused treatment, but Nurse Campbell took note of Plaintiff's injuries. Id.  Plaintiff was subsequently escorted to y-dorm and placed in a cell. Id. at ¶ 7.

While in y-dorm, Plaintiff filed an informal grievance about the officers' use of excessive force (Doc. 49 at ¶ 8).  However, the grievance was returned without action because the incident had already been reported in Plaintiff's disciplinary report. Id.

On January 2, 2014, Plaintiff was seen by the medical department as a result of the statements made in his disciplinary report (Doc. 49 at ¶ 10).  The nurse recorded Plaintiff's injuries, and he was given acetaminophen (Doc. 49-3 at 2-3).

On January 6, 2014, Defendant Jones, who was working in y-dorm threatened Plaintiff with harm because of statements Plaintiff made in his disciplinary reports and grievance (Doc. 49 at ¶ 10).  On January 7, 2014, Plaintiff filed a second informal grievance that was never acknowledged or returned. Id. at ¶ 11. On January 29, 2014, Plaintiff filed an appeal to the unacknowledged informal grievance; however the appeal was neither acknowledged nor responded to. Id. at ¶ 12.  On February 21, 2014, Plaintiff filed another appeal to the Secretary of the Department

of Corrections, but that appeal was neither acknowledged nor responded to. Id. at ¶ 13.

On March 6, 2014, Plaintiff was released from confinement (Doc. 49 at ¶ 14). Plaintiff told the dorm sergeant that he needed protection because he was afraid for his life. Id. The sergeant had Plaintiff fill out a form, but later told Plaintiff that Defendant Worst said that "he won't allow Plaintiff to check in on his officers." Id. Plaintiff was released back in to the general population. Id.

Plaintiff then went to Defendant Worst's office to renew his request for protection, but it was refused, and Plaintiff remained in the general population (Doc. 49 at ¶ 17).

On March 12, 2014, Defendant Ward ordered Plaintiff outside where he (Plaintiff) was handcuffed (Doc. 49 at ¶¶ 18-19). Defendant Ward slammed Plaintiff to the ground where he and Defendant Bush punched Plaintiff's head and told him that "this is what you get for writing grievances on us." Id. at 20. Plaintiff was then escorted to medical where Nurse Campbell recorded his injuries. Id. at ¶ 21.

On March 12, 2014, Plaintiff filed an informal grievance which was returned with a note stating that the matter was being investigated (Doc. 49 at ¶ 23). Plaintiff filed an appeal to the informal grievance, which was neither acknowledged nor responded

to. Id. at ¶ 24.   On April 15, 2014, Plaintiff filed an appeal to the Secretary of the Department of Corrections, but received no acknowledgment or response. Id. at ¶ 25.

Plaintiff asserts that he was never contacted by an investigator as a result of his complaints. Id. at ¶ 26.  He claims that he suffers a permanent degenerative disk disorder, scarring, and back pain from the attacks. Id. at ¶ 27.  Plaintiff also suffers anxiety, suspicion, paranoia, fear and mistrust when it comes to officers. Id. at ¶ 28.

Plaintiff raises the following claims:

> Plaintiff sues Defendants Rios, Bush, and Jones for their use of excessive force on December 23, 2013 (Claim One);
>
> Plaintiff sues Defendant Gatto for his failure to intervene in the December 23, 2013 assault (Claim Two);
>
> Plaintiff raises a First Amendment claim against Defendant Jones[2] for Jones' threat after Plaintiff filed a grievance about the December 23, 2013 incident (Claim Three);
>
> Plaintiff sues Defendant Worst for his failure to stop the December 23, 2013 attack and upon

---

[2] Plaintiff named Defendant Bush as the wrongdoer in Claim Three (Doc. 49 at 7). However, a review of the facts alleged in the third amended complaint suggests that Claim Three was actually directed towards Defendant Jones, and the Court will treat it as such.  To the extent Plaintiff deliberately named Defendant Bush in Claim Three, the Claim is dismissed for failure to state a claim because no alleged facts implicate Defendant Bush in a First Amendment claim.

his refusal to keep Plaintiff in protective
custody (Claim Four);

Plaintiff alleges that Defendant Ward
conspired to retaliate against him for
reporting the December 23, 2013 incident by
writing frivolous disciplinary reports (Claim
Five); and

Plaintiff sues Defendants Bush and Ward for
assaulting and battering him on March 12, 2014
(Claim Six).

(Doc. 49 at 6-8).  He seeks $600,000 in compensatory and punitive
damages for his physical harm and $400,000 in damages "for the
emotional and distress of Plaintiff caused by their assault and
battery and retaliation upon Plaintiff." (Doc. 49 at 14-15).

**B.   Motion to Dismiss**

In their motion to dismiss, Defendants argue that Plaintiff
has not exhausted his administrative remedies under 42 U.S.C. §
1997e for any of his claims (Doc. 52 at 6).  Defendants also assert
that Plaintiff fails to state a claim upon which relief may be
granted and that they are entitled to qualified immunity. Id. at
10-15.  Finally, Defendants urge that dismissal of any official
capacity claim is warranted under Eleventh Amendment immunity. Id.
at 15-16.  Defendants reiterate these assertions in their reply
(Doc. 58).

### C.    Response

In his response, Plaintiff argues that he actually did exhaust his administrative remedies, and that at the motion to dismiss stage, this Court must accept this assertion as true, even though it directly contradicts sworn statements in his first two complaints (Doc. 55 at 4).   Plaintiff also states that he has abandoned any claim against Defendant Reid and that he brings his claims against the defendants only in their individual capacities. Id. at 12-13.

## II.  Standard of Review for Motions to Dismiss

When considering a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.   Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004).   Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").   However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

> conclusions, and a formulaic recitation of the
> elements of a cause of action will not do.
> Factual allegations must be enough to raise a
> right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Bell Atlantic Corp. v. Twombly, illustrated a two-pronged approach to motions to dismiss. First, a reviewing court must determine whether a Plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth.  Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 679.

In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

### III. **Analysis**

### A.   **Plaintiff has exhausted his claims**

Defendants ask this Court to dismiss Plaintiff's complaint because has not properly exhausted any of his claims (Doc. 52 at 6-10).  The Prison Litigation Reform Act (PLRA) provides that:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility until such
> administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The Eleventh Circuit has held that a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.2008). This means that, procedurally, the defense is treated "like a defense for lack of jurisdiction," although it is not a jurisdictional matter. Id.

In Bryant, the Eleventh Circuit directs district courts to consider failure to exhaust in a motion to dismiss. 530 F.3d at 1374-75 ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."). In matters of exhaustion, courts are permitted to hear evidence outside of the record. Id. at 1377 n. 16. Accordingly, the parties may submit documentary evidence

concerning the exhaustion issue, and doing so will not require the conversion of the motion to dismiss into one for summary judgment. Id.  In addition, the district court may resolve factual questions concerning a plaintiff's alleged failure to exhaust, as long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. Bryant, 530 F.3d at 1376.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court first considers the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must accept, for purposes of the motion, the plaintiff's version of the facts as true.  See Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008).  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. Id.  If the court determines that the complaint is not subject to dismissal, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id.

Defendants assert that Plaintiff has exhausted none of his claims (Doc. 52 at 10). In Florida, a Department of Corrections prisoner must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC. Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33-103.005-103.007).

Plaintiff counters that he has exhausted all claims in his complaint. According to Plaintiff, he filed the following grievances:

> **January 2, 2014.** (Informal Grievance) complaining about the December 23, 2013 assault. Plaintiff attaches the grievance to his third amended complaint (Doc. 49-2). The grievance was "returned without action" with a note informing Plaintiff that his allegations were being investigated. Id.

> **January 6, 2014.** Plaintiff filed a second informal grievance about the assault which was not acknowledged or returned (Doc. 49 at ¶ 11);

> **January 6, 2014.** Plaintiff filed a grievance regarding the January 6, 2014 threat from Defendant Jones (Doc. 49-4). Plaintiff stated in the grievance that he feared for his life. Id. The response was "approved for reporting at this time." Id.

> **January 29, 2014.** Plaintiff appealed the second informal grievance about the assault (Doc. 49 at ¶ 12). Again, the appeal was neither acknowledged nor responded to. Id.

**February 21, 2014.** Plaintiff filed a "further" appeal to the Secretary of the Department of Corrections regarding the January 29, 2014 informal appeal, but it too was neither acknowledged nor responded to (Doc. 49 at ¶ 14).

**March 12, 2014.** Plaintiff filed an informal grievance in regards to the March 12 assault by Defendants Bush and Ward. The grievance was returned with a notation that the matter was being investigated (Doc. 49-6). Plaintiff was specifically advised that "these allegations have been reported; no need for further reporting on your part." Id.

**March 29, 2014.** Plaintiff filed an appeal of the informal grievance of the March 12 assault. But it was neither acknowledged nor responded to.

**April 9, 2014.** Plaintiff sent a handwritten "formal complaint" to the inspector general's office describing the December 23, 2013 assault (Doc. 49-7).

**April 10, 2014.** Plaintiff filed an appeal to the Secretary of the Florida Department of Corrections complaining of both the December 23, 2013 attack and the March 5, 2014 attack (Doc. 49-7). On April 17, 2014, the appeal was denied with an acknowledgment that "the subject of [Plaintiff's] grievances was previously referred to the Office Inspector General." Id.

**April 15, 2014.** Plaintiff filed another appeal to the Secretary of the Department of Corrections, but received no acknowledgment or response to the appeal (Doc. 49 at ¶ 25).

(Doc. 49). Defendants note that Plaintiff also filed three grievances in February and March of 2016, each of which was

rejected as untimely (Doc. 58 at 2).  The untimely grievances will not be considered by this Court.

In the instant case, neither party disputes that Plaintiff's grievance of Claim Three, his First Amendment claim against Defendant Jones, was approved.  Accordingly, the question of Plaintiff's exhaustion of Claim Three can be resolved at the first step of the Turner test described above.  Because his grievance was approved, Plaintiff had no grounds on which to appeal, and Claim Three is exhausted.

As to the remaining claims, the issue of exhaustion is less clear.  Defendant asserts that "Plaintiff had administrative remedies available to him which he failed to utilize." (Doc. 58 at 3).  Plaintiff counters that he complied with each step of the grievance process, even though some of the grievances were never acknowledged or approved (Doc. 55).  Alternatively, he argues that, to the extent he did not comply, the grievance procedure was unavailable. Id.  Accordingly, this Court must proceed to the second step of the Turner test to resolve the disputed factual issues related to exhaustion.

The grievance forms submitted by Plaintiff indicate that he filed informal grievances regarding the December and March assaults (Doc. 49-2; Doc. 49-6).  The forms on which the informal

grievances were written contained the following pre-printed statement pertaining to informal grievances:

> Based on the above information, your grievance is _____. (Returned, Denied, or Approved). **If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.**

Id. (emphasis added). In each case, "returned" was written in the blank and both forms contained a note that the grievance was being returned to Plaintiff because his allegation had already been reported. Id. Notably, the March 12, 2014 grievance form was returned with the following statement:

> Your allegations have been referred to the IG Offices. These allegations have been reported. **No need for further reporting on your part.**

(Doc. 49-6) (emphasis added). Despite explicit instructions from the institution that Plaintiff need not further report this incident, and despite the notation on the grievance forms that formal grievances are appropriate only when a grievance is denied, Plaintiff filed a grievance with the Secretary of the Florida Department of Corrections detailing both the December and March assaults (Doc. 49-7). The grievance was denied. [3] Id.

_____

[3] The grievance was reviewed and evaluated, and Plaintiff was informed:

> The subject of your grievance was previously referred to the Office Inspector General. It

Accordingly, it is undisputed that Plaintiff completed the first and third steps of the grievance procedure.   Presumably then, Defendants' exhaustion argument is based solely upon Plaintiff's alleged failure to comply with the second step of the procedure— the requirement that he file a formal grievance with the institution's warden (Warden Reid).   In his third amended complaint, Plaintiff asserts that he did file grievances to Warden Reid, but received no response (Doc. 49 at ¶ 12).   In his April 10, 2014 grievance to the Florida Department of Corrections, Plaintiff asserts that he had "taken [his] complaints [of] assault by staff to the institutional inspector and to the warden [and] I

---

> is the responsibility of that office to determine the amount and type of inquiry that will be conducted.   This inquiry/review may or may not include a personal interview with you.   Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> As this process was initiated prior to the receipt of your grievance, your request for action by this office is denied.

(Doc. 49-7 at 4). Because this Court concludes that Plaintiff exhausted his administrative remedies to the extent they were available, it need not determine whether the Secretary's consideration and denial of this grievance on the merits waived any procedural bar that may have existed from Plaintiff's failure to complete step two of the exhaustion process. See Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1213-14 (11th Cir. 2015) ("[D]istrict courts may not find a lack of exhaustion by enforcing procedural bars that the prison declined to enforce.").

also sent a formal complaint to the Office of Internal Affairs[.]"
(Doc. 49-7).

Defendants point out that Plaintiff did not make this same
claim in his original complaint. Indeed, the allegations in the
instant complaint and those in his original complaint differ in
this regard. In his original complaint, Plaintiff stated that he
sent a handwritten letter to the Inspector General and to Warden
Reid at the Charlotte Correctional Institution because Defendants
Gatto and Ward told officers on the confinement wings that
Plaintiff was filing "bullshit grievances on officers" due to the
December assault. (Doc. 1 at ¶ 15).[4] Plaintiff claimed that he
could not <u>properly</u> comply with all the exhaustion requirements
because the officers would not provide him with grievance forms.
<u>Id.</u> In the instant complaint Plaintiff asserts that his formal
grievance to Warden Reid went unanswered (Doc. 49 at ¶ 12).
Plaintiff explains the disparity between his first two complaints
and the operative complaint as follows:

> Plaintiff states that he did in fact file
> grievances as outlined in his third amended
> complaint. However, Plaintiff was adamant in
> being heard, so he continuously asked the

---

[4] Plaintiff attached a copy of a letter from Lt. Timothy
Langelier of the Division of Internal Affairs acknowledging
receipt of his complaint and noting that it was mailed to the
Officer of the Inspector General and to Warden Reid at the
Charlotte Correctional Institution (Doc. 9-1). However, Plaintiff
does not provide a copy of the letter he wrote to the warden.

> guards for grievance forms, to no avail, in
> order to refile a grievance or appeal when
> previous grievance[s] or appeal[s] were not
> responded to.    This led to Plaintiff
> erroneously stating that he didn't exhaust
> administrative remedies because he couldn't
> get grievance forms.

(Doc. 55 at 3-4).   The Court finds that Plaintiff exhausted his
administrative remedies in regard to both the December and March
assaults.

First, Plaintiff adequately explains his failure to complete
the second step of the grievance procedure in the precise manner
prescribed by the Florida Administrative Code.   His evidence shows
that he wrote a letter to Warden Reid after his first informal
grievance was returned and that the handwritten letter to Warden
Reid was necessary because the defendants thwarted his attempts to
file formal grievances by refusing to provide him with additional
grievance forms. Turner, 541 F.3d at 1084 ("A remedy has to be
available before it must be exhausted, and to be available a remedy
must be capable of use for the accomplishment of its
purpose.")(internal citations omitted); Turner, 541 F.3d at 1082
("The defendant bear the burden of proving that the plaintiff has
failed to exhaust his available administrative remedies.").
Despite having the opportunity to file a reply, Defendants do not
explain why Plaintiff's handwritten letter to Warden Reid did not
exhaust the second step of the grievance process, nor do they

provide any evidence to counter Plaintiff's assertions that he was not provided with grievance forms. See Goebert v. Lee County, 510 F.3d 1312 (11h Cir. 2007) (rejecting defendant's argument that the plaintiff's claims were unexhausted because she used the incorrect form to file her grievance).

Next, to the extent his letter to Warden Reid did not exhaust the issues surrounding the March assault, the Court notes that Plaintiff was explicitly instructed not to further report the incident. Moreover, the grievance form erroneously suggests that an appeal to the warden is available only when the informal grievance is denied, which Plaintiff's was not. Plaintiff asserts that the statements on the grievance form led him to believe that the matter was being investigated, and he believed further grievances were unnecessary (Doc. 55 at 6-7). See Ross v. Blake, 136 S. Ct. 1850, 1860 (2016) (recognizing that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."). Based on the foregoing, Plaintiff did not fail to exhaust his administrative remedies, and Defendants' motion to dismiss for failure to exhaust is denied.

**B.   All claims against the defendants in their official capacities are dismissed**

On the first page of his third amended complaint, Petitioner asserts that he sues each defendant in both his individual and official capacities (Doc. 49 at 1).   Defendants move to dismiss the official capacity claims on the ground that they are barred by Eleventh Amendment immunity (Doc. 52 at 15).   In Plaintiff's response to the motion to dismiss, Plaintiff states that he sues the defendants only in their individual capacities (Doc. 55 at 13).

Absent an express waiver, the Eleventh Amendment bars a claim for damages against a State in federal court. Kentucky v. Graham, 473 U.S. 159, 169 (1985).   Likewise, the Eleventh Amendment also bars federal suits against state officials in their official capacity because such actions seek recovery from state funds. Id. Each of the named defendants is a state official.   Accordingly, all official capacity claims against the defendants are dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

**C.   All claims against Defendant Reid are dismissed**

Defendants note that there are no allegations contained in the third amended complaint against this defendant (Doc. 52 at 11).   Plaintiff concedes that he has "abandoned any claim against

Defendant Reid[.]" (Doc. 55 at 12).   Accordingly, Defendant Reid is dismissed from this action without prejudice.

### D. Plaintiff's excessive force, failure to intervene, failure to protect, and retaliation claims will be allowed to proceed

#### 1. Excessive Force

Plaintiff asserts that on December 23, 2013, Defendants Rios, Bush, and Jones picked him up and slammed him to the floor at least twice (Doc. 49 at 8-9).   He also asserts that on March 12, 2014, Defendants Ward and Bush slammed Petitioner to the ground and punched the top of his head in retaliation for filing a grievance regarding the December 23, 2013 assault. Id. at 11-12.

The use of excessive physical force against a prisoner may violate the Eighth Amendment, even if the prisoner does not suffer significant injury. Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 4 (1992)).   At this stage of proceedings, the Court concludes that Plaintiff has stated a claim for excessive force against Defendants Rios, Bush, Jones, and Ward.

#### 2.   Failure to Intervene

Plaintiff asserts that Defendant Gatto failed to intervene to stop Defendants Rios, Bush, and Jones from assaulting him on December 23, 2013 (Claim Two).

An officer may be liable under § 1983 for failing to intervene and stop another officer's use of excessive force. Detris v. Coats, 523 F. App'x 612, 616 (11th Cir. 2013) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)).  However, to be liable, the defendant must be in a position to intervene. Ensley, 142 F.3d at 1407.  Viewed in the light most favorable to Plaintiff, Gatto was in a position to intervene in the December 23, 2013 assault because he was the supervisor and specifically directed Defendants Rios and Jones to take Plaintiff to the multiservice area (Doc. 49 at 9).  Under the facts alleged, Gatto, as supervisor, could have sought to intervene or could have told Rios and Jones to stop.  As such, Plaintiff has stated a plausible claim for relief against Defendant Gatto.

### 3.    Failure to Protect

Plaintiff asserts that Defendant Worst failed to protect him from further assault from Defendants Bush and Jones by releasing him into the general population after Plaintiff asked him not to (Claim Four).  The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001).  To be deliberately indifferent, Defendant Worst must have been aware of a substantial risk of serious harm; merely

negligent failure to protect an inmate from attack does not justify liability under § 1983. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).  Although Plaintiff's third amended complaint suggests that Defendant Worst only negligently released him into the general population, construing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim against Defendant Worst for failure to protect.

### 4.   Retaliation

In Claim Three, Plaintiff asserts that Defendant Jones threatened him in y-dormitory in retaliation for Plaintiff's grievance in regards to the December 23, 2013 assault (Doc. 49 at 7).  Specifically, Plaintiff states that Jones told him, "If you come back on the compound I'll hurt you again." Id. at 10.   In Claim Five, Plaintiff alleges that Defendant Ward conspired to write frivolous disciplinary reports on Plaintiff because of grievances filed about the December 23, 2013 assault. Id. at 8.

For a prisoner to state a First Amendment retaliation claim under § 1983, he must establish that: (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the speech. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008). A prisoner's filing of a grievance concerning the

conditions of his imprisonment is protected speech under the First Amendment. Id. (quoting Boxer X v. Harris, 437 F.3d 1107, 1112 (2006)).  The adverse action that the inmate suffers as a result of the prison official's alleged retaliation must be such that it "would likely deter a person of ordinary firmness from engaging in such speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). The second element of the cause of action thus requires "an objective standard and a factual inquiry." Id. at 1277.  The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." Id. at 1278.

Viewed in the light most favorable to Plaintiff, Defendant Jones' threats in the y-dormitory, in retaliation for Plaintiff's grievances, could give rise to a First Amendment retaliation claim. Likewise, Plaintiff states that he was "issued frivolous disciplinary reports for lewd and lascivious act, and attempted battery" which were eventually overturned on appeal (Doc. 49 at 13).  Although he does not specifically name Defendant Ward as the purveyor of those allegedly false reports, liberally construing the pro se complaint, the Court finds that Plaintiff has stated First Amendment claims against Defendants Jones and Ward.

## IV.   Conclusion

Based on the foregoing, it is hereby

**ORDERED and ADJUDGED:**

1.    Defendant's motion to dismiss Plaintiff's third amended complaint (Doc. 52) is **GRANTED IN PART** and **DENIED IN PART**.

2.    Plaintiff's official capacity claims are dismissed.

3.    Plaintiff's claims against Defendant Reid are dismissed.

4.    The remaining defendants shall file an answer to Plaintiff's deliberate indifference claims within **TWENTY-ONE (21) DAYS** from the date on this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this   14th   day of November, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Petitioner Cardenas
Counsel of Record

- 24 -