UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PETER CARDENAS,

      Plaintiff,

v.                    Case No: 2:14-cv-496-FtM-29CM

CAPT. GATTO, SGT. BUSH, SGT.
RIOS, (Sic), OFFICER JONES,
CAPT. WORST, and FNU WARD,
in individual capacity,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon the motion for summary judgment filed by Defendants Gatto, Bush, Rios, Jones, Ward and Worst (Doc. 85, filed April 3, 2017). Plaintiff did not respond to the motion for summary judgment, and it is now ripe for review. For the reasons given, the defendants' motion for summary judgment is **GRANTED**.

## I.   Background and Procedural History

Plaintiff initiated this action on August 14, 2014 by filing a *pro se* civil rights complaint against Defendants Warden Reid, Captain Gatto, Sergeant Bush, Sergeant Rios, Officer Jones, Captain Worst, Inspector General John or Jane Doe, "Any and All Past/Future Defendant[s]," and FNU Ward. Id. Plaintiff's second amended complaint against Defendants Gatto, Bush, Rios, Worst, Jones and Ward is the operative complaint before this Court (Doc.

48).  The defendants filed answers and affirmative defenses to the second amended complaint (Doc. 68; Doc. 82), and on December 6, 2016, the parties were directed to conduct discovery (Doc. 69).

The defendants filed a motion for summary judgment on April 3, 2017, and attached numerous documents in support of the motion (Doc. 85).  Plaintiff was directed to respond to the motion (Doc. 89).  Plaintiff was cautioned that: (1) his failure to respond to the motion would indicate that it was unopposed; (2) all material facts asserted by the defendants would be considered admitted unless controverted by proper evidentiary materials; and (3) Plaintiff could not rely solely on the allegations of his pleadings to oppose the motion (Doc. 89) (citing <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985)).  Despite the warning and an extension of time to do so (Doc. 96), Plaintiff did not file a response to the defendants' motion for summary judgment.

## II.  **<u>Pleadings</u>**

### a.  **Second Amended Complaint**[1]

The relevant allegations against the defendants are directed towards two separate incidents in which Plaintiff alleges that excessive force was used against him.  Plaintiff makes the following allegations in his second amended complaint:

---

[1] Plaintiff has labeled the operative complaint as the "Third Amended Complaint" (Doc. 49).  However, it is actually the second amended complaint filed in this action.  Any reference to the complaint in this order is to docket entry 49.

On December 23, 2013, while housed in the f-dorm of the Charlotte Correctional Institution, Plaintiff was approached by Defendants Gatto, Jones, Bush, and Rios (Doc. 49 at ¶ 1). He was handcuffed from behind, and his feet were secured by leg irons. Id. While being escorted to pre-confinement, Plaintiff was picked up and slammed to the floor by Defendants Rios and Jones. Id. at ¶ 2. Defendant Gatto, who was Rios' and Jones' supervisor, instructed Defendants Rios and Jones, "not here in population. Let's do this in multiservice." Id. Plaintiff was then picked up from the floor and escorted to multiservice. Id.

While in multiservice, Defendants Jones and Bush again picked up Plaintiff and slammed him to the floor (Doc. 49 at ¶ 9). While on the floor, Plaintiff was kicked by Defendant Rios and lost consciousness. Id. When he woke, Defendants Rios and Bush were kicking him. Id. Defendant Bush told Plaintiff that he hated "all you niggers." Id.

While escorting Plaintiff to medical, Defendant Gatto told him that if he reported what happened, he (Defendant Gatto) would break Plaintiff's jaw (Doc. 49 at ¶ 6). As a result, Plaintiff refused medical treatment, but Nurse Campbell took note of Plaintiff's injuries. Id. Plaintiff was subsequently escorted to y-dorm and placed in a cell. Id. at ¶ 7.

On January 2, 2014, Plaintiff was seen by the medical department as a result of the statements made in his disciplinary

report (Doc. 49 at ¶ 10). The nurse recorded Plaintiff's injuries, and he was given acetaminophen (Doc. 49-3 at 2-3).

On January 6, 2014, Defendant Jones, who was working in y-dorm, threatened Plaintiff with harm because of statements Plaintiff made in his disciplinary reports and grievance (Doc. 49 at ¶ 10).

On March 6, 2014, Plaintiff was released from confinement (Doc. 49 at ¶ 14). Plaintiff told the dorm sergeant that he needed protection because he was afraid for his life. Id. The sergeant had Plaintiff fill out a form, but later told Plaintiff that Defendant Worst said that "he won't allow Plaintiff to check in on his officers." Id. Plaintiff was released back in to the general population. Id. Plaintiff then went to Defendant Worst's office to renew his request for protection, but the request was refused, and Plaintiff remained in the general population. Id. at ¶ 17.

On March 12, 2014, Defendant Ward ordered Plaintiff outside where he (Plaintiff) was handcuffed (Doc. 49 at ¶¶ 18-19). Defendant Ward slammed Plaintiff to the ground where he and Defendant Bush punched Plaintiff's head and told him that "this is what you get for writing grievances on us." Id. at 20. Plaintiff was then escorted to medical where Nurse Campbell recorded his injuries. Id. at ¶ 21.

Plaintiff asserts that he suffers a permanent degenerative disk disorder, scarring, and back pain from the attacks. Id. at

¶ 27.  Plaintiff also claims to suffer anxiety, suspicion, paranoia, fear and mistrust when it comes to officers.  Id. at ¶ 28.

Plaintiff raises the following five claims in his second amended complaint.  He alleges that:

> Defendants Rios, Bush, and Jones used excessive force against him on December 23, 2013 (Claim One);
>
> Defendant Gatto failed to intervene in the December 23, 2013 use-of-force incident (Claim Two);
>
> Defendant Jones'[2] threatened Plaintiff after he filed a grievance about the December 23, 2013 incident (Claim Three);
>
> Defendant Worst failed to stop the March 2014 use-of-force and refused to keep Plaintiff in protective custody (Claim Four);
>
> Defendant Ward conspired to retaliate against him for reporting the December 23, 2013 incident by writing frivolous disciplinary reports (Claim Five); and
>
> Defendants Bush and Ward assaulted and battered him on March 12, 2014 (Claim Six).

(Doc. 49 at 6-8).  Plaintiff seeks $600,000 in compensatory and punitive damages for his physical harm and $400,000 in damages "for the emotional and distress of Plaintiff caused by their

---

[2] Plaintiff named Defendant Bush as the wrongdoer in Claim Three (Doc. 49 at 7).  However, a review of the facts alleged in the third amended complaint suggests that Claim Three was actually directed towards Defendant Jones, and the Court will treat it as such.

assault and battery and retaliation upon Plaintiff." (Doc. 49 at 14-15).

### b. Motion for Summary Judgment

The defendants have filed a motion for summary judgment (Doc. 85). The defendants generally dispute the veracity of Plaintiff's statements, and note that, even when force was used to subdue Plaintiff, it was neither excessive nor unwarranted, but was applied in a good faith effort to restore order. Id.

In support of their motion, the defendants filed Plaintiff's inmate file, consisting of his disciplinary reports, incident reports, medical records, and grievances he has submitted (Doc. 85-1; Doc. 85-2; Doc. 85-3; Doc. 85-4). They also filed: Charlotte Correctional Institution's Daily Security Roster for the days at issue in the second amended complaint (Doc. 85-3 at 11-15, "Security Roster"); Defendant Frank Gatto's Affidavit (Doc. 85-4 at 1-4, "Gatto Aff."); Defendant Michael James Worst's Affidavit (Doc. 85-4 at 5-6, "Worst Aff."); Defendant Johnny Del Rios' Affidavit (Doc. 85-4 at 7-8, "Rios Aff."); Defendant Patrick James Bush's Affidavit (Ex. 85-4 at 9-11, "Bush Aff."); Defendant Wesley Ward's Affidavit (Doc. 85-4 at 12-13); Officer Reshae Cherry's Affidavit (Doc. 85-4 at 14-15, "Cherry Aff."); Defendant John K. Jones' Affidavit (Doc. 85-4 at 16-17, "Jones Aff."); video recording of Plaintiff's December 23, 2013 post-use-of-force examination (Doc. 85-5, "December video"); video recording of

Plaintiff's March 12, 2014 post-use-of-force examination (Doc. 85-5, "March video"); and Plaintiff Peter Cardenas' Deposition (Doc. 85-6, "Pff. Depo.").

### III. <u>Standards of Review</u>

#### a.    Summary Judgment Standard

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof.  <u>Celotex</u>, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322, (1986). Where, as here, a non-moving party does not controvert the moving party's assertion of a properly supported fact, the Court may consider the fact undisputed. <u>See</u> Fed. R. Civ. P. 56(d).

### b. Excessive Force

The United States Supreme Court has determined that the "core judicial inquiry" to state an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). Notably, the absence of a significant injury does not necessarily defeat an Eighth Amendment excessive force claim because "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." <u>Id.</u> at 9 (Blackmun, J., concurring in judgment).

The extent of a plaintiff's injuries is not, however, irrelevant. The extent of the injuries is a factor that suggests whether an officer believed the force necessary in a particular situation, and it provides an indication of the amount of force applied. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). As noted by the Supreme Court in Hudson, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Rather, a court must consider the following factors in determining whether force was applied "maliciously and sadistically" to cause harm: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted upon the prisoner; (4) the threat to the safety of staff and inmates posed by the prisoner; and (5) any efforts made to temper the severity of a forceful response. Fennell v. Gilstrap, 559 F.3d 1212 (11th Cir. 2009).

Finally, it is not necessary that an officer actually participate in the use of excessive force in order to be held liable under § 1983. Rather, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985).

### c. First Amendment Retaliation

In <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250-51 (11th Cir. 2005), the Eleventh Circuit adopted a three-part test to determine whether a plaintiff has stated an actionable First Amendment retaliation claim. Under the test, a plaintiff must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech. <u>Id.</u> at 1250. The court held that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [his] First Amendment rights." <u>Id.</u> at 1254. Accordingly, a plaintiff need not show that his own exercise of First Amendment rights were chilled, but instead, can establish an injury if he shows that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights. <u>Id.</u> at 1254-55.

### IV. <u>Analysis</u>

**a. Claims One and Two- Excessive Force (Defendants Rios, Bush, and Jones) and Failure to Intervene (Defendant Gatto)**

The following facts regarding the December 23, 2013 use-of-force are undisputed:

At approximately 6:10 a.m. on December 23, 2013, Plaintiff, who was housed in F-dormitory, exposed his genitals to Officer Demel while masturbating. He was charged with "intentionally committing a sexual act in the presence of a staff member" (Doc. 85-1 at 3-4, 11-12);

At approximately 6:15 a.m., Defendants Bush and Jones removed Plaintiff from the F-dormitory and escorted him to the multi-service building for a pre-confinement medical examination (Doc. 85-1 at 3-4, 5; Bush Aff. at ¶ 2; Jones Aff. at ¶ 2);

Plaintiff refused to cooperate during the walk to the multi-service building by moving around, struggling, and not complying with orders (Doc. 85-1 at 3; Bush Aff. at ¶ 2). Plaintiff told Defendants Bush and Jones that he "was not gunning that hoe and if I did you know she would eat it up." Id. Defendants Bush and Jones used a wrist-lock technique to shift Plaintiff's weight forward and force him to continue walking (Bush Aff. at 1-2);

Plaintiff was not in leg restraints during the walk (Gatto Aff. at 3; December video);

The December 23, 2013 event occurred during morning chow. Defendant Gatto normally stands in the yard near the multi-service building during the time the use-of-force was alleged to have happened, and he did not observe anyone use force against Plaintiff on that morning (Gatto Aff. at 2; Bush Aff. at 2 (attesting that Gatto was not present during Plaintiff's escort to the multiservice building)).

In the multi-service building, Plaintiff was still combative. Defendants Jones and Bush used force to place Plaintiff in a sitting position, and then to eventually pin him to the floor to prevent him from banging his head on the floor (Gatto Aff. at ¶ 14; Doc. 85-1 at 3-6; Bush Aff. at 2);

At approximately 6:19 a.m., Defendants Bush and Jones were relieved by Defendant Rios and Officer Larson who assisted Plaintiff to his feet and escorted him to the medical department for a post use-of-force examination (Doc. 85-1 at 3-6; December video; Gatto Aff. at 2; Rios Aff. at 2);

Any officer involved in a use of force incident is not assigned escort duty (Doc. 85-1 at 3-6; December video; Gatto Aff. at 2);

Defendant Gatto was notified or responded from the yard with Lieutenant Nye after force was used in the multiservice building (Doc. 85-1 at 1-2). At 6:23 a.m., Defendant Gatto began filming Plaintiff's post use-of-force exam (December video). In the video, Defendant Gatto states that the use-of-force involved only Defendants Bush and Jones (December video);

During the altercation, Plaintiff suffered a wound on the left side of his head (Ex. A at 7-8; December video). A small amount of blood is visible on the left collar of Plaintiff's white t-shirt. However, Plaintiff shows no other signs of injury (December video)

Plaintiff refused medical treatment. The examining nurse wrote in her notes that she was unable to determine the source of the blood on Plaintiff's forehead because he refused to allow her to do so. Plaintiff also refused to make a statement or phone call (December video; Doc. 85-1 at 8, 19);

Plaintiff was found guilty of lewd and lascivious behavior (Doc. 85-1 at 20);

On January 2, 2014, Plaintiff filed a grievance about the December 23, 2013 use-of-force, and as a result, he was examined by the nurse on that date (Doc. 85-3 at 18-19). The only injuries found during the exam were a 1/3 inch old abrasion on Plaintiff's forehead and a one-inch old abrasion on Plaintiff's shoulder. Id.

**1.    Defendants Rios and Gatto are entitled to summary judgment on Claims One and Two**

Defendant Rios has presented evidence in the form of affidavits and the December video showing that he was not present during the use-of-force against Plaintiff on December 23, 2017. Likewise, Defendant Gatto has presented evidence that he was not involved in the December use-of-force until after it had concluded. The defendants have entered evidence showing that neither Defendant Rios nor Defendant Gatto interacted with Plaintiff on that date until after he was restrained by Defendants Bush and Jones in the multi-service building.   The video (taken by Defendant Gatto) shows Officer Rios escorting Plaintiff to the medical department, and no use of force by any officer is shown on the video.

Plaintiff has not addressed the evidence regarding Defendant Rios' or Defendant Gatto's absence during the use-of-force incident on December 23, 2013, and the Court will consider the fact of their absence as undisputed. Fed. R. Civ. P. 56(e)(2).[3]

---

[3] Although Plaintiff asserted in his second amended complaint that Defendant Rios was present during the December use of force, he has produced nothing to refute the defendants' evidence otherwise.  It was explained to Plaintiff in the Summary Judgment Notice (Doc. 89) that a properly supported motion for summary judgment results in the inability of the plaintiff to rely on his complaint alone.   Plaintiff was provided an opportunity for discovery, but has offered no evidence or statement in opposition to the defendants' evidence or properly supported statement of material facts regarding Rios' or Gatto's presence at the December use-of-force incident.  In fact, Plaintiff has offered no response

Accordingly, it is undisputed that Defendant Rios was not involved in the use-of-force against Plaintiff on December 23, 2013, and he is entitled to summary judgment on Claim One. Likewise, because it is undisputed that Defendant Gatto was not present during Defendants Bush's and Jones' use of force against Plaintiff, Defendant Gatto was not in a position to intervene, and he is entitled to summary judgment on Claim Two.[4]

### 2. Defendants Bush and Jones are entitled to summary judgment on Claim One

To determine whether the force used by Defendants Bush and Jones was such that it "shocks the conscious," and violated Plaintiff's Eighth Amendment rights, the Court will address the factors set forth in Fennell v. Gilstrap.

---

to the defendants' motion for summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970) ("It has always been perilous for the opposing party [in a motion for summary judgment] neither to proffer any countering evidentiary materials nor file [an opposing affidavit.]"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.").

[4] As noted in the Court's discussion of the excessive force claims against Defendants Bush and Jones, the undisputed evidence shows that the force used against Plaintiff was not constitutionally excessive. See discussion infra Part IV(a)(2). Accordingly, Defendant Gatto would be entitled to summary judgment on Plaintiff's failure to intervene claim even had Plaintiff presented evidence showing that Defendant Gatto was present when force was used on December 23, 2013.

*i.   The need for the application of force*

Plaintiff asserts in his second amended complaint that he was approached by Defendants Gatto, Jones, Bush, and Rios, handcuffed and placed into leg irons (Doc. 49 at 6).  He asserts that he was then slammed to the floor by Defendants Rios and Jones, both outside and inside the multi-service building while Defendant Gatto watched.  Id. at 9.   However, it is undisputed that Plaintiff was not placed in leg restraints as he alleges in his second amended complaint and that neither Defendant Rios nor Defendant Gatto were present during Plaintiff's initial encounter with the defendants on December 23.   It is also undisputed that Plaintiff was initially restrained because he exposed his genitals to another officer and that he struggled with Defendants Jones and Bush as they attempted to escort him to the multi-service building for a pre-confinement physical.  Defendants Jones and Bush admit to using a "wrist-lock" technique on Plaintiff to force him to walk forward.  See Lee v. Hefner, 136 F. App'x 807, 813 (6th Cir. 2005) (noting that the wrist lock is a low level of force with minimal probability of injury).

When Plaintiff reached the multi-service building, it is undisputed that he attempted to bang his head on the ground, and Defendants Jones and Bush placed him in a prone position until Defendant Rios and Officer Larson arrived.  Under the undisputed facts presented here, it was reasonable for Defendants Bush and

Jones to believe that force was necessary to restrain Plaintiff—both during the walk to the multi-service building, and after they arrived. See Campbell v. Sikes, 169 F.3d 1353, 1374–77 (11th Cir. 1999) (recognizing that use a restraint device was permissible on a prisoner who had taken affirmative acts towards harming herself and posed a serious threat of further self-harm).

> ii. *The relationship between the need and the amount of force used*

As noted, the undisputed evidence shows that Plaintiff resisted walking to the multi-service building; continued to struggle with Defendants Bush and Jones when they arrived; and needed to be restrained to prevent him from banging his head on the floor of the multi-service building. The defendants' use of the low-level wrist lock technique and their decision to force Plaintiff to the ground to prevent him from banging his head on the floor suggests that the particular force used was neither malicious nor sadistic, but rather "a good faith effort to maintain or restore discipline in a difficult situation." Fennell v. Gilstrap, 559 F.3d 1212, 1219 (11th Cir. 2009) (citing Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007)).

Moreover, Defendants Bush and Jones initially encountered Plaintiff at the dormitory at 6:15 a.m. and were relieved by Defendant Rios and Officer Larson only four minutes later, with a medical exam attempted at 6:20 a.m. Accordingly, any force used

was short-lived; suggesting a conclusion that the force was appropriately calibrated to the threat posed by Plaintiff.

### iii. The extent of the injury inflicted

Here, it is undisputed that only sign of a wound noted by the nurse immediately after the December use-of-fore incident was blood on Plaintiff's forehead, and the December video shows only a penny-size drop of blood on Plaintiff's otherwise white t-shirt. During the video, Plaintiff does not demonstrate any tenderness, soreness, or difficulty moving or raising his hands above his head (December video). Immediately after the use of force, Plaintiff refused treatment for his injuries. However, only ten days after the December 23, 2013 use-of-force, Plaintiff filed a grievance, and in response, a medical exam was performed. The only injuries found during the exam were a very small abrasion on Plaintiff's forehead and a one-inch old abrasion on Plaintiff's shoulder.

As noted, the core inquiry in an excessive force claim is not the quantum of injury sustained; however, the extent of an injury provides an indication of the amount of force applied. <u>Wilkins</u>, 559 U.S. at 37. In the instant case, the minimal injury suffered by Plaintiff suggests that only a modicum of force was used.

### iv. The extent of the threat to the safety of staff and inmates

Plaintiff has not disputed the evidence from the defendants that he was struggling during his walk from the dormitory to the

multi-service building and that when he reached the building, Plaintiff attempted to bang his head on the floor. Therefore, it was not unreasonable for Defendants Bush and Jones to believe that Plaintiff posed a threat to his own safety if he remained unrestrained.

> *v.  Any efforts made to temper the severity of a forceful response*

Immediately after Plaintiff was taken to the ground by Defendants Bush and Jones, Defendant Rios and Officer Larson were summoned to escort Plaintiff to a post use-of-force medical exam. In Cockrell, the Eleventh Circuit determined that the fact that officers immediately summoned medical assistance for an injured inmate was strong evidence that there was no malicious or sadistic purpose in the use of force. 510 F.3d at 1312. Likewise, the immediate offer of medical assistance to Plaintiff shows an effort to temper the severity of the force used by the defendants. See Fennell, 559 F.3d at 1220.

Considering all the factors, the undisputed evidence shows that the force used against Plaintiff by Defendants Bush and Jones on December 23, 2013 did not shock the conscience and was applied in a good faith effort to maintain discipline. Hudson, 503 U.S. at 7. Accordingly Defendants Bush and Jones are entitled to summary judgment on Claim One.

**b. Claim Three – Verbal Threat and First Amendment Retaliation (Defendant Jones)**

Plaintiff asserts that:

> On January 6, 2014, Defendant Jones who was working in y-dorm threatened Plaintiff because Plaintiff made a statement on the disciplinary report and filed a grievance and stated, "if you come back on the compound I'll hurt you again."

(Doc. 49 at 10). First, any stand-alone claim of a verbal threat is due to be dismissed for failure to state a claim on which relief may be granted. Plaintiff does not allege that Defendant Jones actually carried out his alleged threat in any manner. Verbal abuse alone is insufficient to state a constitutional claim. Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)).

Next, Defendant Jones is entitled to summary judgment on any First Amendment retaliation claim raised in Claim Three. Defendant Jones attests that he was not present in the y-dormitory on the date of the alleged threat and that he did not threaten Plaintiff at any time (Jones Aff. at 2). The Daily Security Roster shows that Defendant Jones was not working in the y-dorm on the date Plaintiff asserts he made the alleged threat (Doc. 85-3 at 13). Defendant Gatto attests that security protocol at the prison would not allow an officer to "simply show up" at an unassigned dormitory (Gatto Aff. at 3). Plaintiff has not refuted the

evidence showing that Defendant Jones was not in the y-dorm on the date alleged, and as a result, could not have threatened Plaintiff. Nor has he presented evidence disputing Defendant Jones' denial that he threatened Plaintiff at any time. Accordingly, Defendant Jones is entitled to summary judgment on Claim Three.

      **c.    Claims Four and Six – Failure to Protect (Defendant Worst) and Excessive Force (Defendant Ward and Defendant Bush)**

The following facts regarding the March 12, 2014 use-of-force incident are undisputed:

> Officer Rashae Cherry was present in the officer's station of the F-Dormitory when Plaintiff exposed his genitals to her while masturbating (Cherry Aff. at ¶ 2; Bush Aff. at at ¶ 2; Doc. 85-2 at 9);

> Officer Cherry called Defendant Ward to report the incident (Cherry Aff. at ¶ 2; Bush Aff. at at ¶ 2; Ex. 85-2 at 1, 9);

> Defendant Ward took Plaintiff outside of the dormitory to counsel him about his conduct at 5:59 a.m. (Doc. 85-2 at 1). Officer Cherry knew that Plaintiff had a reputation as a "volatile and violent inmate," so she continued to watch Plaintiff while he was with Defendant Ward (Cherry Aff. at ¶ 2; Ex. 85-2 at 1);

> While they were outside, Plaintiff took a "hook swing" at Defendant Ward (Cherry Aff. at ¶ 2; Bush Aff. at ¶ 2; Ex. 85-2 at 1);

> Thereafter, Defendant Ward used force to restrain Plaintiff until Officers Lovett and Kelly arrived at 6:01 a.m., and these officers escorted Plaintiff to the multiservice building (Cherry Aff. at ¶ 2; Bush Aff. at at ¶ 2; Gatto Aff. at 3; March video; Ex. 85-2 at 1);

At 6:04 a.m. Defendant Gatto initiated the hand-held video camera (Doc. 85-2 at 2, March video);

Thereafter, Plaintiff was examined by Nurse Campbell, and no injuries were reported (Ex. 85-2 at 3-6; March video);

Defendant Bush was not involved in the incident, nor was he present in F-Dormitory on that day because he was assigned to Dormitory G on March 22, 2014 (Security Roster; Ward Aff. at ¶ 2; Cherry Aff. at ¶ 2; Bush Aff. at 3; March video);

On March 13, 2014, Defendant Ward wrote an incident report regarding his altercation with Plaintiff (Doc. 85-2 at 1);

Plaintiff was found guilty of attacking Defendant Ward, and was sentenced to disciplinary confinement (Doc. 85-2 at 11);

On March 13, 2014, Officer Cherry wrote an incident report about Plaintiff's lewd and lascivious behavior (Doc. 85-2 at 9); and

Plaintiff's disciplinary report for lewd and lascivious behavior was overturned on a technicality because it failed to list the specific rule violated (Doc. 85-2 at 7).

### 1. Defendant Bush is entitled to summary judgment on Claim Six

Defendant Bush has offered evidence in the form of the security roster, witness affidavits, and the March post use-of-force video showing that he was not involved in the March 12, 2014 use-of-force. Plaintiff has not addressed the defendants' evidence regarding Defendant Bush's absence, and the Court will consider the fact of his absence as undisputed. Fed. R. Civ. P.

56(e)(2). Accordingly, Defendant Bush is entitled to summary judgment on Claim Six.

### 2. Defendant Ward is entitled to summary judgment on Claim Six and Defendant Worst is entitled to summary judgment on Claim Five

To determine whether the force used by Defendant Ward violated Plaintiff's Eighth Amendment rights, the Court will again address the factors set forth in Fennell v. Gilstrap.

*i. The need for the application of force*

Plaintiff asserts in his second amended complaint that he was paged to the prison sally port by Defendant Ward, ordered to go outside, and after Plaintiff put his hands behind his back, Defendant Ward grabbed the back of Plaintiff's shirt and slammed him to the ground (Doc. 49 at 12).

However, it is undisputed that Plaintiff was summoned to the sally port because he exposed himself to Officer Cherry, and that Plaintiff was angry as a result (Doc. 85-2 at 1). In addition, Defendant Ward has offered undisputed evidence in the form of witness affidavits that Plaintiff attempted to strike Defendant Ward prior to the use of force. Thus, it was reasonable for Defendant Ward to believe that force was necessary to restrain Plaintiff under the facts presented here. See Burke v. Bowns, 653 F. App'x 683 (11th Cir. 2016) (officers had "significant need" to bring hostile prisoner under control); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force

when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

### ii. The relationship between the need and the amount of force used

The undisputed evidence shows that Plaintiff attempted to strike Defendant Ward prior to the use of force. Defendant Ward's decision to force Plaintiff to the ground and hold him there until Officers Lovett and Kelly arrived suggests that the particular force used by Defendant Ward was not malicious or sadistic, but rather applied in a good faith effort to maintain or restore discipline in a difficult situation. Moreover, Defendant Ward initially encountered Plaintiff at 5:59 a.m. and was relieved by Officers Lovett and Kelly only two minutes later—supporting a conclusion that the force was short-lived, and appropriately calibrated to the threat posed by Plaintiff.

### iii. The extent of the injury inflicted

Here, it is undisputed that Plaintiff suffered no injury from the March use-of-force. Plaintiff does not assert otherwise, and the only injury noted in Nurse Campbell's report is a "healing superficial scratch to back of neck." (Doc. 85-2 at 3).

### iv. The extent of the threat to the safety of staff and inmates

It is undisputed that Plaintiff attempted to strike Defendant Ward prior to the defendant's use of force. Therefore, it was not

unreasonable for Defendant Ward to believe that Plaintiff posed a substantial threat to his safety if he remained unrestrained.

> v. *Any efforts made to temper the severity of a forceful response*

Immediately after Plaintiff was taken to the ground by Defendant Ward, Officers Lovett and Kelly were summoned to escort Plaintiff to the medical department. The immediate offer of medical assistance shows an effort to temper the severity of the use of force. See <u>Fennell</u>, 559 F.3d at 1220.

Considering all the factors, the undisputed evidence shows that the force used against Plaintiff by Defendant Ward on March 12, 2014 did not shock the conscience and was applied in a good faith effort to maintain discipline. <u>Hudson</u>, 503 U.S. at 7. Accordingly Defendant Ward is entitled to summary judgment on Claim Six.

Because Defendant Ward is entitled to summary judgment on Claim Six, Defendant Worst had no duty to intervene and is also entitled to summary judgment on Claim Four.

**d. Claim Five – Retaliation (Defendant Ward)**

Plaintiff asserts that Defendant Ward retaliated against him "by writing frivolous disciplinary reports on Plaintiff" because he filed grievances about the December 23, 2013 use of force by Defendant Bush and Jones (Doc. 48 at 8). Presumably, Plaintiff refers to the March 13, 2014 incident reports written by Officer

Cherry and Defendant Ward in response to: (1) Plaintiff exposing his genitals to Officer Cherry on March 12, 2014 (Doc. 85-2 at 9); and (2) Plaintiff's altercation with Defendant Ward on March 12, 2014 (Doc. 85-2 at 1).

The defendants have offered undisputed evidence showing that Officer Cherry, not Defendant Ward, wrote the disciplinary report regarding Plaintiff's March 12, 2014 lewd and lascivious behavior (Doc. 85-2 at 9). Accordingly, Plaintiff cannot predicate his retaliation claim against Defendant Ward based upon a disciplinary report written by a non-defendant.

The defendants have also offered evidence showing that the March 12, 2014 use-of-force was instigated by Defendant's behavior, and was not frivolous. See discussion supra. Plaintiff was found guilty of the actual behavior underlying the alleged retaliatory false disciplinary report, precluding a retaliation claim based upon that report. See O'Bryant v. Finch, 637 F. 3d 1207, 1215 (11th Cir. 2011)(holding that a prisoner "cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process").[5]

---

[5] Plaintiff does not assert that he was denied due process at any disciplinary hearing.

Given the undisputed evidence, no rational juror could find that the March 13, 2014 incident reports were written in retaliation for Plaintiff's grievances.  <u>See</u> discussion <u>supra</u> Claims Four and Six.  Defendant Ward is entitled to summary judgment on Claim Five.

## V.    <u>Conclusion</u>

In accordance with the foregoing, it is hereby **ORDERED:**

1.    The motion for summary judgment filed by Defendants (Doc. 85) is **GRANTED**.  With no remaining defendants or claims, this case is dismissed with prejudice.

2.    The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment in favor of the defendants.

**DONE** and **ORDERED** in Fort Myers, Florida on this   17th   day of July, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: OrlP-4
Copies: All Parties of Record